IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BONNIE BERTRANG,

                                                       OPINION AND ORDER

            Plaintiff,

                                                      17-cv-918-bbc

    v.

CITY OF MONDOVI, TREIG E. PRONSCHINSKE
and SCOTT SMITH,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action brought under Title VII of the Civil Rights Act and 42 U.S.C. § 1983 arises out of plaintiff Bonnie Bertrang's employment as a patrol officer for defendant City of Mondovi from 2007 to 2015. Plaintiff contends that defendants City of Mondovi, Treig E. Pronchinske, the mayor, and Scott Smith, another police officer, harassed her and discriminated against her because of her sex and gender, violated her rights to equal protection and due process and eventually caused her to resign.

Now before the court is defendants' motion for partial judgment on the pleadings with respect to five out of six of the counts plaintiff includes in her amended complaint. Dkt. #16. Defendants argue that plaintiff's allegations supporting those five counts are insufficient to state a claim upon which relief may be granted. Dkt. #16. For the reasons set out below, I am granting the motion with respect to plaintiff's due process claims. Those claims will be dismissed for failure to state a claim upon which relief may be granted. I am denying the motion in all other respects.

1

Plaintiff alleges the following facts in her amended complaint.

ALLEGATIONS OF FACT

A. The Parties

Plaintiff Bonnie Bertrang began working as a part-time patrol officer for the City of Mondovi in March 2007. In May 2013, she was promoted to full-time patrol officer. In April 2014, defendant Treig Pronschinske became mayor of the City. Defendant Scott Smith was also an officer with the police department.

B. Defendant Pronschinske's Interactions with Plaintiff

Within days of becoming mayor, defendant Pronschinske began seeking out plaintiff while she was on or off duty to talk about non-police related business. Pronschinske told plaintiff on multiple occasions that his wife and daughter were out of town so he was home alone. Pronschinske also drove by plaintiff's home several times a day and followed plaintiff while she was on patrol, stopping her to talk and telling her he was worried about her patrolling alone. Plaintiff rebuffed what she perceived as Pronschinske's attempts to form a relationship with her and reported Pronschinske's conduct to the chief of police, who forwarded plaintiff's complaints to the city administrator and a city council member. Around this time, Pronschinske contacted the chief of police and requested that plaintiff's probation be extended. However, by that time, plaintiff was a non-probationary employee.

### C. Opening for Chief of Police Position

In July 2014, the chief of police, Terry Pittman, announced his retirement. Defendant Pronschinske formed a hiring committee consisting of Chief Pittman and two city council members, Galen Hagen and Robert Hoden. Under then-existing procedures, the hiring committee would consider all candidates and make a recommendation to the mayor and city council. The new chief of police would be appointed by the mayor, subject to confirmation by two-thirds of the members of the city council.

Plaintiff and another officer, defendant Scott Smith, applied for the position. In September 2014, the hiring committee interviewed both candidates. All three committee members recommended that plaintiff be hired as the interim chief of police, concluding that plaintiff's skills, experience, recommenders and interview responses were vastly superior to Smith's. Defendant Pronschinske told the committee he would not accept the recommendation. The next day, Pronschinske met with defendant Smith for more than an hour. During October and November 2014, Pronschinske and Smith began spending a lot of time together, both at the police department and outside of work.

After the committee recommended plaintiff as the new chief of police, anonymous letters were sent to Chief Pittman and various council members regarding plaintiff. At least one of the letters included a picture of plaintiff wearing a bikini. Additionally, an anonymous Facebook page was started that consisted of posts and content meant to degrade and humiliate plaintiff and "highlight her sex/gender."

At the October 14, 2014 city council meeting, defendant Pronschinske removed the

action item "appointing interim chief" from the agenda, stating he was not prepared to appoint anyone at that time. At the next council meeting, on October 28, 2014, Pronschinske read plaintiff's application for the chief of police position, though he did not read any of her letters of recommendation. He then "belittled" plaintiff's application and qualifications. City administrator Dan Lauersdorf told Pronschinske that any discussions regarding personnel issues should be conducted in a closed session, but Pronschinske told Lauersdorf to "shut up." Pronschinske then read a newly produced letter of recommendation for defendant Smith aloud, though he did not read Smith's application. A few people at the meeting, including Smith's friends and relatives, expressed concerns over the appointment process.

Sometime between October 28 and November 11, 2014, defendant Pronschinske formed a "citizen participation committee," consisting of a city council member, Pronschinske's wife and personal friends of Pronschinske and Smith. On November 11, 2014, Pronschinske appointed defendant Smith as the "officer in charge" of the police department, giving Smith the authority to act as the chief of police in Chief Pittman's absence. The following day, the citizen participation committee posted notices for two upcoming meetings, open to the public, to be held on November 20 and 25, 2014.

Historically, citizen participation meetings occurred only to discuss budget items, not an employee's personal life or background. At the meetings conducted by defendant Pronschinske, however, the sole topic of discussion was plaintiff's application to be chief of police. The meetings included discussion about plaintiff's gender, pictures of her in a bikini

from her Facebook page and the anonymous letters sent to council members that commented on plaintiff's gender. Pronschinske did not rebuke anyone who criticized plaintiff because of her gender. He also discussed a small claims action that had been filed against plaintiff several years earlier and stated that he had checked out plaintiff's references and they were not valid. There were no comments or discussions at the meetings regarding defendant Smith.

After the meetings, the citizen participation committee made recommendations for the qualifications of the city's police chief. Among other qualifications, the new chief was to have 7-10 years of law enforcement experience and be a certified law enforcement officer. The new qualifications did not rule out plaintiff. However, defendants Pronschinske and Smith then added additional qualifications in order to exclude plaintiff from consideration, among them a requirement that each application must have 7-10 "full time" and "sworn" years of law enforcement experience. Plaintiff had 14 years of law enforcement experience, including seven years of sworn law enforcement experience. However, she had only two years of "full time sworn" experience.

In January 2015, defendant Pronschinske directed the city's attorney to revise the ordinance governing the procedures for hiring a new chief of police. The ordinance was changed to expand the number of individuals on the hiring committee from three to five, with three of those individuals being chosen by the mayor. Pronschinske then selected the new committee, including two personal friends of Smith. After the revised job qualifications were posted, plaintiff applied for the position, but her application was rejected because she

5

did not meet the new qualifications. Of the remaining four applicants, one was female and three were male. The other female applicant was fully qualified and was currently the police chief for a similarly-sized city in Wisconsin, but she was cut after the first round of interviews. Smith was ultimately hired as chief of police.

### D.  Defendant Smith's Conduct toward Plaintiff

After defendant Smith became chief of police, plaintiff's son developed a serious health condition and plaintiff applied for family leave. Smith denied plaintiff's request for leave. After plaintiff complained to the city administrator and police union, her request was approved.

Defendant Smith made numerous "sexual comments and sex-based comments" about plaintiff to her co-workers, including "wouldn't she be a fun ride," she "had a nice rack," she was "very attractive" and the city crew "loved to sniff the squad care seat after you/she was done using it." Smith also called her "runt," "puny" and "small," and made comments in her presence about other women's appearances.

### E.  The City Hires a Sergeant and Plaintiff Resigns

Defendant Smith could not manage the police department on his own because he did not have the necessary skills, training and experience. The City posted an opening for a sergeant position to assist Smith. Plaintiff applied for the sergeant position, but she was excluded because the job description was written by Smith and Pronschinske to require 7-10

6

years of full-time sworn law enforcement experience.

By spring 2015, plaintiff believed that she would not be treated fairly by defendants Pronschinske and Smith and that she would not be able to advance while employed by the City. She ultimately resigned.

OPINION

Plaintiff's amended complaint includes the following six "causes of action":

(1) Sex/Gender Discrimination – Terms and Conditions of Employment, 42 U.S.C. § 2000e-2;

(2) Sex/Gender Discrimination – Sex-Based Harassment, 42 U.S.C. § 2000e-2;

(3) Sex/Gender Discrimination – Failure to Hire/Promote, 42 U.S.C. § 2000e-2;

(4) Sex/Gender Discrimination – Constructive Discharge, 42 U.S.C. § 2000e-2;

(5) Deprivation of Civil Rights (equal protection and due process) against Individual Defendants, 42 U.S.C. § 1983; and

(6) Deprivation of Civil Rights against City of Mondovi, 42 U.S.C. § 1983.

Defendants have moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings with respect to all of the counts except count 3, which is based on plaintiff's allegations that defendants failed to hire or promote her to the positions of officer in charge, police chief and sergeant because of her sex. A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). Gill v. City of Milwaukee, 850 F.3d 335, 339 (7th Cir. 2017). Therefore, I must determine whether the

complaint states "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). I will apply this standard to each of defendants' arguments below.

      A.  <u>Discrimination in Terms of Conditions of Employment (Count 1)</u>

In Count 1 of the amended complaint, plaintiff alleges that defendants treated her less favorably than male coworkers and applicants because of her sex. Defendants argue that this count should be dismissed because it is duplicative of plaintiff's other theories of discrimination. In particular, defendants argue that plaintiff fails to identify any distinct adverse action in Count 1 that is not also included in Counts 2, 3 and 4, which include her promotion, hostile work environment or constructive discharge theories. Plaintiff responds that a jury could consider the "totality" of allegations included in Counts 1, 2, 3 and 4 in deciding whether plaintiff was treated differently because of her sex and thus, the fact that the allegations supporting the various counts overlap is not reason to dismiss Count 1.

Plaintiff is correct. Under Rule 8, a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." A "claim" is simply a set of facts producing an injury. N.A.A.C.P. v. American Family Mutual Ins. Co., 978 F.2d 287, 292 (7th Cir. 1992). The "counts" in plaintiff's complaint are not necessarily "claims," but rather are the articulation of legal theories on which plaintiff's claims are premised. Under

the federal rules, a plaintiff may advance more than one legal theory in support of a single claim, and those alternative theories may, but need not be, set forth in separate counts. Id.; Fed. R. Civ. P. 8(d)(2)). This does not mean that plaintiff would be able to recover twice for the same injury. Id. ("[D]ifferent legal theories [] do not multiply the number of claims for relief.") Rather, plaintiff can recover only once for each injury she alleges, regardless how many legal theories she raises. In other words, the federal rules permit plaintiffs to include multiple legal theories based on the same set of allegations. That the theories may be duplicative is not reason to dismiss them.

Defendants' only argument for dismissal of Count 1 is its duplicative nature. Because that argument is not persuasive, I will deny the motion to dismiss Count 1.

B. Hostile Work Environment and Constructive Discharge (Counts 2 and 4)

Next, defendants argue that Counts 2 and 4 of plaintiff's amended complaint should be dismissed because her allegations suggest that defendants and others engaged in low-level harassment that was not severe enough to create a hostile work environment or require her to resign. In particular, defendants argue that plaintiff's allegations regarding defendant Pronschinske's advances and his subsequent actions in publicly humiliating her and refusing to appoint her as chief of police are not sufficiently severe to support harassment or constructive discharge claims. Similarly, defendants argue that Smith's sexual comments and stray statements about plaintiff's and other women's appearances would not support harassment or constructive discharge claims.

9

Defendants' arguments are not persuasive. Defendants rely primarily on cases decided at summary judgment or after a jury trial and fail to acknowledge that this case is only at the pleading stage. E.g., Mannie v. Potter, 394 F.3d 977, 979 (7th Cir. 2005) (summary judgment); Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998) (summary judgment); Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1145 (7th Cir. 1997) (summary judgment); Baskerville v. Culligan International Co., 50 F.3d 428, 430 (7th Cir. 1995) (jury trial); Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (summary judgment); Boebel v. Combined Insurance Co. of America, No. 02 C 1772, 2004 WL 144135, at *1 (N.D. Ill. Jan. 16, 2004) (summary judgment).

As the Court of Appeals for the Seventh Circuit has stated repeatedly, "[t]he pleading requirement for employment-discrimination claims is minimal." Clark v. Law Office of Terrence Kennedy, Jr., 709 F. Appx. 826, 828–29 (7th Cir. 2017). See also Carlson v. CSX Transp., Inc., 758 F.3d 819, 827 (7th Cir. 2014) (criticizing district court for relying on "summary judgment decisions that addressed not the content of complaints but the evidence needed to take a claim to a jury"). To state a claim of sex discrimination, a plaintiff need only "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [or his] sex." Tate v. SCR Medical Transportation, 809 F.3d 343, 346 (7th Cir. 2015) (quoting Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)). See also Rutledge v. Illinois Dept. of Human Services, 785 F.3d 258, 259 (7th Cir. 2015); Swanson v. Citibank, N.A., 614 F.3d 400 (7th Cir. 2010); EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 781-82 (7th Cir. 2007) (stressing simplicity of pleading

10

Title VII discrimination claim). As the court of appeals has explained, "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." Carlson, 758 F.3d at 827 (stating that it was sufficient for plaintiff to identify which positions she sought and was denied and attribute the denial to sex discrimination).

This minimal pleading standard also applies to discrimination claims based on a hostile work environment or constructive discharge. As the court of appeals explained in Carlson, a district court should not dismiss such claims at the pleading stage if the "[hostile] situation is identified and the unlawful motivation alleged." Id. at 830. This is particularly true where the plaintiff "include[s] specific examples of poor treatment." Id. The court emphasized that, even if the conditions "described in her complaint may not ultimately qualify as intolerable, [] we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." Id.

Under the standards applicable at the pleading stage, plaintiff has adequately alleged that she was subjected to a hostile work environment and constructive discharge based on her sex. She asserts that she was treated so poorly by defendants Pronschinske and Smith that she was effectively forced out of her position with the police department. She also contends that the treatment was motivated by her sex. She includes examples of the poor treatment. I cannot say definitively at the pleading stage that plaintiff will not be able to prove that her conditions were intolerable. Therefore, I will deny defendants' motion to dismiss plaintiff's hostile work environment and constructive discharge claims.

C. Procedural Due Process

Plaintiff also raises procedural due process claims based on two theories: (1) loss of her employment without a hearing and an opportunity to be heard; and (2) the airing of private information about her at public meetings without prior notice. To state a claim for a procedural due process violation, a plaintiff must allege (1) a liberty or property interest protected by the constitution; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. Forgue v. City of Chicago, 873 F.3d 962, 969 (7th Cir. 2017). Defendants argue that plaintiff's procedural due process claims should be dismissed because her allegations do not suggest that she was deprived of any liberty or property interest protected by the constitution. I agree with defendants for the reasons below.

1. Plaintiff's loss of employment

Plaintiff contends that she was denied due process because she was not given a hearing and opportunity to be heard before she was constructively discharged. As a necessary predicate to her claim, plaintiff contends that she had a constitutionally protected property interest in her continued public employment under Wis. Stat. § 62.13(5) and (6m). That statute gives hearing rights to non-probationary police officers. Plaintiff argues that because of the protections in § 62.13, she was not an "at-will" employee, could only be terminated for "cause" and was entitled to a hearing before her termination.

In response, defendants argue that plaintiff misinterprets § 62.13. Defendants state that § 62.13(5) and (6m) confer hearing rights only when an officer is "disciplined," either

by suspension, reduction in rank or discharge. Defendants argue that because plaintiff has not alleged that defendants "disciplined" her, she was not entitled to a just cause hearing contemplated under the statute and was not deprived of any property interest.

There is some support in Wisconsin case law for defendants' narrow reading of the hearing rights conferred by § 62.13(5) and (6m). In Kraus v. City of Waukesha Police & Fire Commission, 2003 WI 51, ¶¶ 65-69, 261 Wis. 2d 485, 662 N.W.2d 294, the Wisconsin Supreme Court stated that § 62.13(5) and (6m) require just cause hearing s only for negative job actions that are disciplinary in nature. See also Eastman v. City of Madison, 117 Wis. 2d 106, 115, 342 N.W.2d 764 (Ct. App. 1983) ( "Section 62.13(5) on its face only applies to proceedings of a disciplinary nature.").

On the other hand, plaintiff may have had a property interest in her employment, regardless whether she was entitled to the specific hearing rights conferred by § 62.13(5) and (6m). An entitlement and protectable property interest "need not be codified in writing; a 'de facto' unwritten or implied policy is sufficient to create an entitlement and protectable property interest." Forgue, 873 F.3d at 970. As relevant here, there is legal authority suggesting that because non-probationary police officers may not be terminated without cause, they have a protectable property interest in their continued employment. See, e.g., Kraus, 2003 WI 51, ¶ 57 ("[A]fter an officer completes the probationary period for a position, including a promotion, [] a property interest arises in that position."); Listenbee v. City of Milwaukee, 976 F.2d 348, 351 (7th Cir. 1992) ("[U]nder Wisconsin law an employee terminable only for cause has a protected property interest in her employment.").

13

Further, once a local government grants a substantive property interest, "it may not define the minimum constitutional requirements of due process." Listenbee, 976 F.2d at 352. Thus, if plaintiff had a property interest in her continued employment, she could not be deprived of it without due process, regardless whether the specific hearing rights contemplated by § 62.13(5) and (6m) apply to her situation.

However, even if I assume plaintiff had a protected property interest in her continued employment as a non-probationary police officer, plaintiff's procedural due process claim still fails because her due process theory makes no sense. Plaintiff contends that she was entitled to due process before she was constructively discharged, but she does not explain what process she believes she was owed. She says only that she was entitled to "notice and an opportunity to be heard" before she was constructively discharged, Plt.'s Opp. Br., dkt. #20 at 23, but she does not suggest that a pre-termination hearing would have been practical or even possible. According to plaintiff's own allegations, her constructive discharge resulted from a series of actions taken by defendants over the course of several months. As plaintiff alleges, her work environment became so hostile because of the "numerous acts of sexual discrimination and harassment" and "public degrad[ation] and belittle[ment]" that she suffered extreme stress and eventually concluded that she could not "effectively and safely continued to preform her job duties." Plt.'s Am. Cpt., dkt. #13, ¶¶ 112-115. Under these circumstances, it would not have been practical to hold a due process hearing before plaintiff was constructively discharged.

Plaintiff's claim is similar to the claim this court dismissed in Witte v. Wisconsin

Dept of Corrections, No. 03-C-0438-C, 2004 WL 2491592 (W.D. Wis. Nov. 4, 2004), aff'd, 434 F.3d 1031 (7th Cir. 2006), in which the plaintiff had argued that he should have been given a hearing before he was subjected to a hostile work environment and constructively discharged. As I explained in Witte, it would be an "impossible expansion of due process" to require employers to provide hearings before an employee is subjected to actions that may ultimately become a hostile work environment. Id. at 5. The plaintiff's claim was distinguishable from the claim at issue in Parrett v. City of Connorsville, 737 F.2d 690, 694 (7th Cir. 1984), in which the court of appeals held that the plaintiff was entitled to a hearing after defendant demoted him from chief of detectives to the uniformed force and refused to assign him any police duties. Because a refusal to assign an officer any duties whatsoever is a discrete action creating an obvious constructive discharge, the employer was obligated and could have provided the employee a hearing "reasonably contemporaneously with the employment action." Witte, 2004 WL 2491582, at 5.

Despite her reliance on Parrett, plaintiff's claim in this case is more like the claim at issue in Witte than the one in Parrett. Unlike the situation in Parrett, plaintiff has not identified a specific action by defendants that was the functional equivalent of a discharge, such as the loss of job title, job duties or salary. Plaintiff also has not identified any specific point at which she should have been given a pre-termination hearing. Instead, she simply argues vaguely that she should have been given process. However, because plaintiff has cited no legal authority to support her claim that she was entitled to a pre-termination hearing or any other specific process under the circumstances here, I am dismissing her procedural due

15

process claim based on the loss of her employment.

2. Discussions about plaintiff at public meetings

Next, plaintiff contends that defendant Pronschinske violated her due process rights by discussing her application and qualifications for chief of police at public meetings without providing her prior notice and an opportunity to be heard. Plaintiff contends that in discussing her application and qualifications with the public, Pronschinske deprived her of both property and liberty interests protected by the constitution.

As the basis for her property interest, plaintiff cites Wisconsin's Freedom of Information Act, Wis. Stat. §§ 19.36(10)(c) and (d), 19.356, and the city's "historical practice" of not discussing personnel data in open sessions. However, these statutes govern what can be disclosed to the public upon request by a citizen. Although they create procedural rules, plaintiff cites nothing in the statutes suggesting that they create property rights protected by the United States Constitution. Nor am I persuaded that these statutes should be interpreted as creating constitutionally-protected property interests. I conclude, therefore, that plaintiff has not stated a procedural due process claim based on the deprivation of a property interest at the public meetings. Manley v. Law, 889 F.3d 885, 893 (7th Cir. 2018) (affirming dismissal of procedural due process claim where "plaintiffs have identified no substantive liberty or property interest attached to the procedural rules they claim the district violated"); Lafayette Linear v. Village of University Park, Illinois, 887 F.3d 842, 844 (7th Cir. 2018) (rejecting argument "that procedures required by state law create

property interests and hence lead to a federal requirement that the state procedures be used"); Miyler v. Village of East Galesburg, 512 F.3d 896, 898 (7th Cir. 2008) ("Procedural guarantees do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause.").

Plaintiff also contends that she was deprived of liberty interests in her reputation and privacy because defendant Pronschinske defamed her. With respect to her reputation, however, it is well established that a plaintiff cannot bring a due process claim based solely on reputational harm alone stemming from defamatory statements. Swanigan v. City of Chicago, 881 F.3d 577, 584 (7th Cir. 2018) ("[R]eputational harm doesn't deprive a person of life, liberty, or property."); Hinkle v. White, 793 F.3d 764, 767 (7th Cir. 2015) ("[M]ere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment.") (citation omitted). Rather, a plaintiff must allege "injury to reputation along with a change in legal status." Hinkle, 793 F.3d at 768. In the employment context, a plaintiff may state a due process claim by alleging that a state actor injured the plaintiff's reputation and "distinctly altered" or "extinguish[ed]" the plaintiff's ability to find a position in her chosen field, such as by placing the plaintiff's name on a list that would prevent her from working in her chosen profession. Id. at 770.

Here, plaintiff concedes that she "cannot state she will have limited to no job prospects in the law enforcement field going forward because of what was done to and said publicly about her." Plt.'s Opp. Br., dkt. #20, at 44. Although plaintiff argues that she

17

should be permitted to proceed on a claim based solely on reputational harm, nothing in the law supports her argument. Therefore, her reputation-based due process claim will be dismissed.

Finally, plaintiff's privacy-based claim will also be dismissed. Plaintiff contends that she was entitled to due process before defendant Pronschinske revealed private information about her education, past employment and references to the public. However, plaintiff cites no legal authority to support her argument that this information, which she included in her application for public employment, is entitled to constitutional protection. The only case she cites, Roe v. Wade, 410 U.S. 113 (1973), is clearly distinguishable. Therefore, plaintiff's procedural due process claims arising from defendant Pronschinske's discussion of her application and qualifications at public meetings will be dismissed.

D. Substantive Due Process

Plaintiff includes a substantive due process claim in her amended complaint. Defendants have moved to dismiss this claim on the ground that plaintiff has not alleged the violation of any fundamental right and defendants' actions do not "shock the conscience."

I agree with defendants that plaintiff's allegations are not sufficient to state a claim for violation of her substantive due process rights. "The Supreme Court has repeatedly cautioned against expanding the contours of substantive due process. Catinella v. County of Cook, Illinois, 881 F.3d 514, 518 (7th Cir. 2018) (citing County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("[W]e have 'always been reluctant to expand the concept of

18

substantive due process.'")). "Substantive due process claims can address harmful, arbitrary acts by public officials[,] [b]ut such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." Geinosky v. City of Chicago, 675 F.3d 743, 750 (7th Cir. 2012). "[T]he Court has limited the reach of the substantive component of the due-process guarantee to cases involving abuse of governmental power so arbitrary and oppressive that it shocks the conscience." Catinella, 881 F.3d at 519, or interferes with the "fundamental rights of marriage, reproduction, child-rearing, and bodily integrity." Viehweg v. City of Mount Olive, 559 F. Appx. 550, 552 (7th Cir. 2014) (citing Sung Park v. Indiana University School of Dentistry, 692 F.3d 828, 832 (7th Cir. 2012)).

In this instance, although her allegations of harassment are troubling, plaintiff has not pleaded facts suggesting a deprivation that "shocks the conscience" in the sense required in due process cases. Compare Rochin v. California, 342 U.S. 165, 172 (1952) (forcible stomach pumping to retrieve swallowed evidence violates substantive due process), with Geinosky, 675 F.3d at 750–51 (explaining that, although issuing 24 bogus parking tickets constituted deliberate and unjustified official harassment, conduct did not violate substantive due process). Therefore, her substantive due process claim will be dismissed.

ORDER

IT IS ORDERED that the motion for partial judgment on the pleadings filed by defendants City of Mondovi, Treig E. Pronschinske and Scott Smith, dkt. #16, is

GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff Bonnie Bertrang's claims that defendants violated her rights to procedural and substantive due process, and those claims are DISMISSED. The motion is DENIED in all other respects.

Entered this 20th day of August, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge